750 F.2d 28
 12 O.S.H. Cas.(BNA) 1089, 1984-1985 O.S.H.D. ( 27,131
 The DURIRON COMPANY, INC., Petitioner,
v.
SECRETARY OF LABOR: UNITED STATES OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION, Respondent,
United Steelworkers of America, Local Union 3320, Authorized
Employee Representative.
 No. 83-3446.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 30, 1984.
Decided Sept. 25, 1984.
 
 Richard A. DuRose (argued), Smith & Schnacke, Dayton, Ohio, for petitioner.
 Occupational, Safety and Health Review Com'n, Washington, D.C., Robert D. McGillicuddy, Domenique Kirchner (argued), U.S. Dept. of Labor, Washington, D.C., Mary-Win O'Brien, Asst. Gen. Counsel, Pittsburgh, Pa., for respondent.
 Robert D. Moran, Vorys, Sater, Seymour & Pease, Washington, D.C., for amicus curiae Cast Metals Federation.
 Before KEITH and CONTIE, Circuit Judges, and DOWD, District Judge.*
 KEITH, Circuit Judge.
 
 
 1
 This is a petition by the Duriron Company (Duriron) to review an order of the Occupational Safety and Health Review Commission (Commission) that found Duriron had violated Section 5(a)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. Sec. 654(a)(1) (commonly known as the general duty clause). For the reasons set forth below, the order of the Commission is affirmed.
 
 
 2
 Petitioner, Duriron, is a business concern engaged in the manufacture of steel and iron castings. The company operates an office and place of business in Dayton, Ohio where 1,500 workers are employed. During the period of July 5 to July 7, 1977, Michael McDonald, an employee in the centrifugal casting department, collapsed on the job due to heat stress. The Dayton area was experiencing a heat wave during this period.
 
 
 3
 On July 5, 1977, McDonald was assigned to work on the casting machines in the centrifugal casting department. After about ninety minutes of working at the machines, McDonald began blacking out, became dizzy, light-headed and was unable to see the digital readout on the transfer ladle of the machine. Fearing that he might pass out and fall into the molten metal, McDonald asked his foreman for reassignment. He returned to his station, but began to faint and just managed to sit down before collapsing. McDonald took himself off the job for the remainder of the day and reported to Duriron's infirmary for treatment.
 
 
 4
 On the following day, McDonald returned to his work station and worked almost the entire day. However, about an hour before quitting time McDonald began to feel dizzy and passed out while walking to a fan. He was carried to the infirmary where he was given fluids and had his blood pressure checked. The nurses refused to allow him to work in the casting area when he returned to work the next day.
 
 
 5
 After July 7, 1977, Duriron took several steps to reduce the heat in the casting department. Larger fans were brought in and shields were installed to cover the pigs which contained the molten metal in order to reduce the sources of radiant heat.
 
 
 6
 In response to employee complaints about excessive heat in the casting department, an OSHA industrial hygienist conducted an inspection of the casting department on July 8, 1977. The hygienist measured the temperature at McDonald's work station and found it to be 95 degrees farenheit. As a result of this reading and other information gathered during the inspection, OSHA issued a citation to Duriron alleging a violation of Section 5(a)(1) of the Occupational Safety and Health Act, 29 U.S.C. Sec. 654(a)(1), commonly known as the general duty clause. Duriron timely contested the citation.
 
 
 7
 A hearing was held on December 19-20, 1977, and February 15, 1978. Duriron contended that a recognized hazard did not exist at its facility, and that even if such a hazard did exist, it was not likely to cause death or serious physical harm. The administrative law judge (ALJ) agreed and vacated the citation, ruling that the Secretary did not meet his burden of proving a violation of the general duty clause. Although the ALJ found that "the evidence has established that heat stress is a recognized hazard in industries employing workers in hot environments." It was further found that Duriron's "centrifugal machine ... operation was not entirely free of the hazard" and that "heat stress was not recognized as a hazard causing or likely to cause death or serious harm in hot environmental workplaces such as respondent's [Duriron's] facility."
 
 
 8
 The Secretary of Labor sought discretionary review by the Commission. On April 27, 1983, the Commission reversed the ALJ's decision and affirmed the citation. Duriron's petition to this Court followed.
 
 
 9
 In its petition for review of the Commission order, Duriron argues that its due process rights were violated through the use of the general duty clause, 29 U.S.C. Sec. 654(a)(1). Duriron claims that the general duty clause was improperly used to enforce the wet bulb-globe thermometer (WBGT) index which is a heat standard. Duriron asserts that it was improper for OSHA and the Commission to use the WBGT index because it is not a standard that has been adopted by OSHA as an occupational safety and health standard. Duriron further contends that it was improper for the Commission to use the WBGT index because it was not adopted by OSHA as required by the rule making procedures of the Act. See 29 U.S.C. Sec. 655.
 
 
 10
 These assertions are without merit. While the WBGT index was included in the citation issued by OSHA against Duriron for violation of the general duty clause, there is no evidence that it was the sole basis for the finding that Duriron was in violation of the Act. Instead, the WBGT index was used as a benchmark to determine that there was a recognized heat hazard in Duriron's centrifugal casting department. In addition to the WBGT index, an expert witness who was called by the Secretary of Labor testified regarding the "hot metals" industry's recognition of heat stress as a hazard. The expert's testimony along with other evidence presented by the Secretary, even without the use of the WBGT index, would have supported a finding that Duriron violated the general duty clause of the Act.
 
 
 11
 Duriron also argues that the Commission erroneously concluded that Duriron violated the general duty clause. Duriron claims the Secretary failed to meet the burden of proof necessary to establish a violation of the general duty clause. We disagree.
 
 
 12
 In Southern Ohio Building Systems, Inc. v. OSHRC, 649 F.2d 456 (6th Cir.1981), this Court stated that in order for the Secretary to prove a violation of the general duty clause, it must show that: (1) the employer failed to render its workplace free of a hazard which was; (2) recognized and (3) caused or was likely to have caused death or serious physical harm. 649 F.2d at 458 (quoting Continental Oil Co. v. OSHRC, 630 F.2d 446 (6th Cir.1980), cert. denied, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 613 (1981)). After reviewing the record in this case, we find that the Secretary did meet his burden of proof to show that Duriron violated the general duty clause. The Secretary introduced evidence which indicated that there was a recognized hazard. Evidence of Duriron's own recognition of the heat stress hazard in its workplace was also introduced by the Secretary. This evidence consisted of precautionary steps Duriron has taken to protect its employees from the dangers of heat stress. The Secretary's expert also testified regarding industry recognition of heat stress as a job related hazard.
 
 
 13
 The record also establishes that the Secretary presented sufficient evidence to show that heat stress was causing or likely to cause death or serious bodily injury. Expert medical testimony indicated that serious injuries and possible death were likely to have been caused by the conditions at the Duriron plant. Moreover, McDonald, Duriron's employee who was struck with heat stress, exhibited many of the symptoms of heat exhaustion. Considering the symptoms of heat stress and/or exhaustion in light of the nature of the work being done, it is easy to see how heat stress could result in serious injury or death. Casting employees who work with molten metal must be alert at all times. Excessive heat which can seriously dull the senses of a worker could result in severe, if not fatal, injury to a Duriron casting department worker. Thus, the Commission was correct in concluding that there was a recognized hazard that could result in serious injury or death.
 
 
 14
 In sum, the decision is supported by substantial evidence. Accordingly, the decision of the Occupational Safety and Health Review Commission finding Duriron in violation of 29 U.S.C. Sec. 654(a)(1) is affirmed.
 
 
 
 *
 Honorable David D. Dowd, United States District Court for the Northern District of Ohio, sitting by designation